Gray v. Department of Justice Good morning, Your Honor. May it please the Court, my name is Kirk Evenson. I represent Leonard Gray in this matter, the appellant. Before I forget, if I could reserve four minutes. You know, it's my job to keep track, so I'll try. Forgive me if I stumble a minute, but I don't do this very often. Your Honor, as you most assuredly probably know in this case, it's about protecting an individual citizen's rights to due process by requiring the government prosecutors to divulge exculpatory impeachment evidence during the course of a criminal trial in accordance with a Brady request. As I said, as you most assuredly know, Leonard Gray was the subject of a prosecution by the United States government for having sexual encounters with a child on an Indian reservation. And so he was charged in billings, the action took place on the Crow Reservation, but during the course of the investigation, apparently the United States prosecutor came across evidence regarding this young child, this young girl, which tended to show that she may have falsified testimony as a young child about what allegedly Mr. Gray had done to her. The problems for the young child were issues like ideations. She, in fact, had accused other people in her schools of having inappropriately touching her and those kinds of things. Those medical records were not divulged, even though there was a Brady request some three or four months prior to the trial. It wasn't until immediately before the trial that the public defender that Mr. Gray had had asked for a disclosure of medical records as it related to the young lady that it was found out that the prosecutor had failed to divulge the information that she had, even though the Brady request had been made. And Mr. Evans, am I right that this is -, that it comes down to whether, at least your appeal, has only to do with the Montana constitutional claims? Yes, Your Honor. The constitution and the statute that I cited as well, the Common Law statute, regarding rights. There are some words, the ones I cited, based on the Montana constitution. So we have to figure out if, in effect, if there's kind of a private right with respect to the Montana constitution. I believe so, Your Honor. In accordance with the Olson case and the progeny that this circuit has addressed on occasion as well, we have to look to that private analog, if I pronounced the word right, and we have to look for that. And in this circumstance, and I'll acknowledge that Montana's constitution, as Your Honors will know, is quite unique, I think, among, I think, among the 50 states. As I said in my brief, I don't want to be trite about it, you know, and say, oh, we're so different than these other places, but I believe that is, in fact, the case because it's so new. The Montana constitution was developed in 1972. In fact, I know a number of the people that were part of the constitution, they're still alive, of the constitutional convention. At any rate, after the conviction in the district court, because the evidence wasn't given to the defense early enough for him to be able to formulate and utilize the exculpatory or impeachment evidence, it was appealed to this circuit, and as Your Honors know, it was reversed for the willful violation by the prosecutor for failure to document and divulge that information in violation of Brady. After Leonard Gray was in prison, he was in prison for a little over two years, the government did not prosecute within, once it was remanded to the district court, did not prosecute within the 70 days required of it, and it filed a motion for a new trial on the 70th day, and ultimately the district court dismissed it and ordered that Leonard Gray be released. So it's for these reasons that we brought the case under the Federal Tort Claims Act. We actually had filed a Bivens claim as well, and under the Montana constitution and Montana common law torts. I believe that the case should be reversed. At this point, the district court judge, Judge Siebel, dismissed us on a Rule 12B6 motion. I believe that decision should be reversed and should be mandated for the private analog kind of thinking in the Olson case and its progeny, I guess you would say. My understanding is that the United States government can be held accountable in the event that you can find this private analog, and I think that's where the discussion has to center, and it's a little unwieldy, I suppose. It seems cumbersome to me as I read these cases about a private analog, particularly in a circumstance like this where we're talking about a criminal action. You're talking about government action because it's always a prosecutor that's doing it either on behalf of the state or on behalf of the United States. In addition to the Montana constitution, which I think is unique and I'll talk about in a second, I think that there is the common law statute as well in Montana statutory law that's cited in my brief. It's the statute regarding damages that essentially says that every person who suffers a detriment from unlawful activities of another individual is entitled to money, and that's what we call damages in Montana. It essentially is really very similar to the Constitution as well because of Section 34, I believe, that talks about I like to call it there's a right for every wrong in essence in Montana is what it's trying to get at, essentially. There's rights reserved by the people that can't be taken away by the government, and in many circumstances cannot be taken away in Montana by private individuals as well. It doesn't just have to be the state action under Montana's constitution, but it can be private citizens as well. If we were, you know, we have some cases where like two justices file a concurrence, and they seem to suggest there's a private action and all. If we had any real question about it, shouldn't we certify it to the Montana Supreme Court? That's exactly what I said in my brief, Your Honor. I'm willing, I do recognize exactly the conundrum we're in here that you're discussing, I guess, is because I'll acknowledge there's not a case exactly on point, and I suspect that there may not be one that I could find anywhere in the country that's similar. Well, there's some guidelines set down in this, the new case, right, the Sunburst case? Yes, Your Honor. And under those guidelines, your case doesn't seem to qualify, or does it? Well, respectfully, Your Honor, I disagree. I think it does qualify. What happened in the Sunburst case, the Supreme, what happened, and I know the counsel there from my hometown in the particular case, what they said was Texaco, I believe it was Texaco, had caused this pollution over time under the ground near Sunburst. And they said, well, in addition to all these other counts, we have a constitutional right under Montana's Constitution to a clean and healthful environment, and that's found in a couple places in the Constitution. And what the Montana Supreme Court said was, no, we're not going to get, all it said was we're not going to get to the constitutional question that you're asking us because there is a right to damages under the newly adopted restatement of the Second Amendment courts in Montana. And so we don't have to get there because you have a cause of action that will adequately protect your clients. And, Your Honor, that brings up the other case cited by the United States as well in their letter to the Court. The Shamel case was actually by Cliff Edwards, who was arguing here earlier this morning.  Older, Cliff Edwards, not his son, Chris. And I'm familiar with that case as well because of my involvement with, frankly, with Montana Trout Unlimited, but because it's a pollution case with a water case. And exactly the same thing, the Montana Supreme Court Justice Lepart said the same thing, is we don't have to get there, Cliff, because you have – They keep seeming not wanting to get there in all these cases. I agree with Your Honor. And that Shamel case actually points to the reason for that because there's case law in Montana. I suspect it's the same everywhere. I don't know. I'm from Montana. But I suspect it's the same everywhere. We don't get to constitutional issues until it's sort of the last resort is kind of the way I look at it. And it seems to me that that's what Judge Lepart was saying in the – in the Shamel case. And so – So you think this is the last resort? Pardon me, Your Honor? That this is the last resort for the Montana court? I believe so, Your Honor. Other than the – I do believe that there is common law in respect to that statute that I cited in the brief and it just mentioned a moment ago because there is a statute in Montana that says if a person, even an individual, damages – hurts you, you have a right to money, and that's what we call damages in the state of Montana. And so I think it's twofold. But I think the Constitution of Montana is probably the better argument, if you will, where there's more – there's more material to work with there because there are a myriad of individual rights in Montana, not necessarily all against the state. It's been acknowledged by the Supreme Court. I think in this Norwood case, I understand that it's a concurring opinion. Justice Nelson, who wrote that concurrence, is still on the Montana Supreme Court. And, you know, I've cited him. But he still only had one vote. Right. He only had one vote. That's true. Justice Trewiler agreed with him, although he's no longer there. No, of course not. He's no longer there. Interestingly, I believe that in the Schamel case, I believe it was that another justice concurred with Judge Lepard in a similar fashion. But I guess the point of that is we have to look to the private analog. And that's where – trust me, I have difficulty with it, too, because of the comparison difficulties with it's a prosecutor for the federal government. And how do you say there's a private action of that? What about the – Mr. Stephenson, what about the government's fallback position? Well, in a sense, all that doesn't matter because these are all barred by, you know, discretionary function exception. Yeah. Malicious prosecution exception. Yes. Right? The false imprisonment exception. Yes. How do you get around that argument, those arguments? Well, I think the difference is, Your Honor, and I've struggled with it. I'll be candid. So have I. But here's what I found that at least was helpful to me in understanding it, And I think it may, in fact, be the case is, and Justice from Montana Supreme Court Nelson sort of alluded to it, you know, eventually Bivens and maybe essentially judicially taken into non-existence because of all the exceptions to the difficulties under that particular cause of action. In a fairly old case now, but is part of the idea about prosecutorial immunity, what have you, the Imbler case from the United States Supreme Court, although it's in a concurring opinion, Justice White talked about the fact that there's a very distinct difference between a prosecutor utilizing his or her discretion or even beyond discretion because of the absolute immunity issues and the fact that there is a purposeful decision to not turn over exculpatory evidence. And in his, in that concurring opinion he talked about how it doesn't mean blanket immunity is necessary or even helpful in protecting the judicial process. It should hardly need stating that ordinarily liability and damages for unconstitutional or otherwise illegal conduct has the very desirable effect of deterring such conduct. And I guess that was helpful to me because I guess that's the point. If there's absolute immunity, why is there Brady? Why would a prosecutor ever turn over the exculpatory evidence? Well, they do take an oath. There's a lot of reasons. Because what happened in your case, you know, the conviction will be reversed. Ultimately, but that doesn't give the ability to let, that doesn't do much for Leonard Graham. No, you asked me, why would the prosecutor turn over Brady material? Because they want to preserve their conviction. Only if it's found out, Your Honor, and that's the problem with Brady. You're not going to deter them very much with damages if it's not found out either. But, well, that is true. You wouldn't be able to if you could never find it out. But the, what happened is I don't think that there's a discretionary ability because Brady says you have to do it. So there's not the discretion. I understand the absolute immunity issue. But my understanding is that the United States comes into the case and takes their place in it, as in some of the Federal Tort Claims Act. The Bolduc, I believe that's how you pronounce it, case that the United States cited to the court discusses of similar circumstance how they talked about the supervision of the FBI agents in Wisconsin. And they just couldn't find a court in Wisconsin that would allow a private individual to sue another private individual. That's where I think it differs in Montana. I think that there is that underneath our Constitution. I think it's a fair reading of it. I don't think it's stretching it. Well, we could assume it without deciding it, and then that would put us in whether it wouldn't matter one way or the other if you're wrong about the discretionary function exception, correct? Yeah, under the malicious prosecution would have exceptions or like the other case that they cited about the salt and battery, and so that's an exception over there? I'm just saying that we could just assume you're right without deciding the constitutional issue, but then we'd still have to figure out this discretionary function issue raised by the government. I believe so, except there is no discretion in my view because of the Brady requirement. It's affirmative. It's required of you. It's not in the prosecution of the case as to whether you turn over exculpatory evidence or not. That's required. The discretionary function is do I utilize hearsay when I know I shouldn't use it? Do I discuss with people the manner in which they should testimony when I know I shouldn't? That's being perhaps zealous and being a good advocate. It's like my old partner said. He's 84 years old now, but he said, when the fixes are even, Kirk, that's when you're going to have a fair case. And that's the difference in this. The fixes weren't even. And for Leonard, as we know, of course, but what happened in that case? I wanted to save four minutes. Pardon, Your Honor? I wanted to save four minutes. Thank you, Your Honor, and I guess I will do that since it's 3.48. I won't be Kansas and be shooting with two seconds left. Thank you. May it please the Court, my name is Bob Grisham and I represent the federal defendants. Your Honors, I think that the important first step is to determine why we're even talking about whether or not the Montana Supreme Court would recognize a cause of action for money damages for violation of the Montana Constitution against a private individual. And that arises only in the context of an FTCA case. I think it's clear that the United States has not waived its sovereign immunity for a claim against it directly for a violation of the Montana Constitution. And so the only reason that the Montana Constitution is relevant is determining whether or not there's a private analog to support the Federal Tort Claims Act case. Now, in doing that, the Court's already mentioned the Sunburst School District case, and I think that's instructive. And to go back, in the Doorware case, which is the first case that addressed the constitutional tort issue, that involved defendants who were acting under color of state law. And the Court found that there was a constitutional tort in that case primarily because it found that the common law remedies that govern the actions between private individuals didn't provide an adequate remedy for a violation by a state actor. And so because of that, they held that there was a constitutional tort, or you could sue these state actors under the Montana Constitution for a violation of certain provisions of that constitution. That is the only case that directly addresses the constitutional tort issue in Montana. No case has ever found that there is a constitutional tort action that may be brought against a private individual. In the Sunburst case, they avoided having to decide that, and instead ruled that because of Doorware, and in the Doorware case, the Doorware case seemed to say if there is an adequate statutory or common law remedy, then we will not find a cause of action under the Constitution. And in the Sunburst case, they found that there was an adequate common law remedy provided by the restatement which provided restoration damages for the property damage. So the question would be here, even if we assume that the provisions of the Constitution that the plaintiff relies on are self-executing, and the Court would find that, the Court, based on the Sunburst decision, would then ask itself, okay, is there a common law remedy or statutory remedy that would provide relief in this case that would preclude or make it unnecessary to create a constitutional tort? And the answer is no, huh, to that question. The answer is there is an adequate common law remedy. And the reason that... What is it? Well, the reason there is, Your Honor, is because in determining whether there is an adequate common law remedy, you don't look at the actions of a prosecutor, the actions of an FBI agent, the actions of a Department of Injustice employee. You look at whether or not someone is a victim of a private actor who has committed similar or analogous acts would have a remedy. In other words, that's the whole purpose of private analog, and the whole reason for the Teckle decision is you have to find similar or analogous conduct by a private individual. For example, in the Bullduck case, they found a case where a private individual had failed to turn over, in that state, a case where a private individual had failed to turn over exculpatory evidence. And under that state's law, there was a remedy. In this case, you have to look to Montana law, and if a private person engaged in similar conduct, would there, in fact, be a remedy? Well, in the plaintiff's complaint, they allege malicious prosecution, they allege negligence, they allege false imprisonment. All those causes of action are recognized under Montana law. So if, in fact, if a private person has committed false imprisonment, if a private person has maliciously begun an action, or if a private person has been negligent, there are common law remedies in Montana to address those situations, and you don't need to find a cause of action under the Montana Constitution. But the problem, as I see it, and where this leads us, and to answer Judge McHugh's question, is what question you would certify to the Montana Supreme Court, because the Montana Supreme Court can't decide this issue in a vacuum. It has to be given a factual scenario. It has to be given some conduct by a private individual, and then the court has to be asked, given this conduct, would you find that there's a cause of action against this individual, this private person, under the Montana Constitution? So the question is, if you do certify it, what factual scenario do you give the Supreme Court to deal with? You can't just say, under the Montana Constitution, would you find a cause of action against a private person. Well, you have to point to the specific section, and you have to point to specific conduct, or the court can't decide that question. And the fact of the matter is, if you look at Montana case law, I have been unable to find any analogous case, any case involving analogous facts to the facts of this case, to a case involving a failure to disclose exculpatory information by a private person, a decision to defend an appeal by a private person, a decision not to request a new trial by a private person. I mean, the fact is, there is no private analog under Montana law, and that, I think, is the basis of our argument, because there is no question to certify it. If you can sue a private person because of a violation of the Montana Constitution, I mean, if you could sue, under the Montana Constitution, a private person for this type of violation. Now, I don't know what the private person would do with a Brady withholding information, or what the duty is of a private person to disclose information in a criminal trial. I guess, Your Honor, you would have to give the Supreme Court a bunch of hypotheticals involving actions of private people and say, under these circumstances, would you find that there is a constitutional tort that you can maintain if you file an action against this private person. I mean, I'm not concerned that we couldn't, like we do in other cases, figure out the appropriate question and give the background, and then the Montana Supreme Court, like most Supreme Courts, modifies the question slightly. But, you know, that's a fairly significant effort, both on our part and the Montana Supreme Court. So my question was more if you just assumed that there were such a claim, you're still back into the discretionary function exception, aren't you, of the Federal Tort Claims Act, and your argument is that you'd end up in the same place. You still don't have a claim. They still wouldn't have a claim. Well, Your Honor, we raised three exceptions to the FTC, the malicious prosecution exception, the false imprisonment exception, and the discretionary function exception. And we didn't raise all those. But for Brady, it would only be discretionary function. No. Actually, Your Honor, with respect to the Brady violation, we allege the malicious prosecution exception. Arguably, a discretionary function exception might apply to a decision as to what constitutes Brady material. But I think once somebody's made the determination that you have Brady material, there's no discretion. And then you don't turn it over. Then you say it would be malicious prosecution. Right. And so we didn't know from the complaint what the allegation was, whether it was centered on determining what was Brady material or just the fact that this prosecutor knew it was Brady material and didn't turn it over. And so we raised the malicious prosecution exception, which the court found applied. And then with respect to the end, you have to understand all the claims that they've made. They also claimed that the FBI agent, Anton, failed to turn over exculpatory evidence. And the record was clear that the prosecutor had it, so the FBI agent gave it to the prosecutor. And so the court found, at least with respect to the Bivens claim, there was qualified immunity. The only basis for dismissing the claim of the FTCA claim against AU, and I want to make sure that I don't mislead the court, against the FBI agent was the lack of a private analog. We didn't argue any exceptions applied to the FBI agent. But they do apply to the rest of the claims, based on the conduct of the prosecutor, the decision to defend the appeal, the delay in requesting a new trial, the purported claim of a failure to ask for the plaintiff's release from prison, and, of course, the BOP's failure to release, which was actually decided in a summary. To the FBI agent, just to be clear, your argument was what? The FBI agent, the FTCA claim should be dismissed because there was no private analog. There is no private analog. So at least that particular defendant, we would need to make this determination. That's correct, Your Honor. I hate to say that, but that's true. I want to make sure that I got all the people straight. Because she's a law enforcement officer, so the malicious prosecution and false imprisonment exceptions don't apply. And if she knew, if she had exculpatory material, she didn't turn it over to the prosecutor. That's right. So with respect to the FBI agent, the private analog is the sole argument. Well, you've narrowed the question. But you would have to find some analogous conduct in the private sector for them to make that decision on. But it's our point, Your Honor, that if a private person, for example, in the Bull Duck case, there was a common law remedy for the failure of the individual to turn over exculpatory material. In that case, there had been a negligence claim, but the court found that under that state's law, it was a malicious prosecution type thing, and it required malice. And so it looked to the malicious prosecution law to determine whether or not there was a remedy. In this case, if you come up with a private analog or private analogy, it's going to push you into the malicious prosecution or false imprisonment remedy area. And so it would be our position that there is, for a private person engaging in this kind of conduct, there would be an adequate remedy. And that remedy would be a malicious prosecution or a false imprisonment claim. But wouldn't the same rationale apply that applies in the discretionary function that that's as to the FBI person, there really isn't a malicious prosecution claim? Well, the malicious prosecution exception doesn't apply to the FBI agent. No, but then we've still got the guy hanging out there as a defendant now. Is there any remedy against him in a private analog if it's not under the Montana Constitution? Okay, I'm not sure I understand your question. If you look for the private analog, you have to consider the acts of a private person, not this FBI agent. Right. A private person engaging in similar conduct. And it's a little hard to figure out, but I guess it would be a private person who didn't turn over documents? Right. Okay. And so if you have that kind of a person under state law and you have a state victim or a private victim who's looking for a remedy, they can look to malicious prosecution or false imprisonment and sue that private person. And so there is a remedy, in fact, there would be a remedy, and so there's no reason to create a cause of action under the Montana Constitution. Before I'm having a little trouble, wouldn't the same logic as to why there really is no, why there is an exception under the Tort Claims Act come to bear because that person isn't spearheading a malicious prosecution? That is, a person like an FBI agent or an investigator or somebody like that. He isn't a prosecutor. There isn't really, I would, if I, you know, if Mr. Evanson filed a complaint in state court against the FBI guy on a private cause of action for malicious prosecution, the court would probably throw it out and they'd say, well, he's not a prosecutor. How can you get him for malicious prosecution? I understand what the court is saying. It's kind of like we're back where we started with the FBI guy. So if you have the private analog, there may not be, you're saying there may not be a claim for malicious prosecution because that FBI agent didn't, or that private person would not have initiated the prosecution? There is no private analog that would give you an alternative remedy unless you had one under the Constitution, which I don't know if you do or don't. And I rely on the malicious prosecution and the false imprisonment because that's what's alleged in the complaint. Okay. So that's, I mean, they're arguing that under Montana law they have a claim for false imprisonment or malicious prosecution, or they termed it wrongful imprisonment or wrongful prosecution. And so that would then restrict, I think, the remedies that they could seek. Yeah, I mean, we'll just ask him because it may be in the broad sense they have that say against the prosecutor or some of the people involved in not letting them out of prison or jail or that sort of thing. Right. But, you know, under the FTC there has to be a private analog to begin with. I mean, there has to be case law that establishes a private analog. I don't think the private analog can be created after the fact. And right now under Montana law there is no private analog, or the plaintiff hasn't pointed to any private analog, either under common law or constitutional law. And so I think it would be inappropriate to certify a question to the Supreme Court and then say, okay, we're going to create a private analog. Although this has never happened in Montana, no private person has ever been held liable for this conduct in Montana. Well, but if the Constitution provided for it, in other words, if it's permissible under the Constitution, then doesn't it, in effect, it's always existed. It just hasn't had an application yet under the Constitution. I guess I have a problem with sort of the case of controversy thing. I mean, if in this case you had a private person who withheld exculpatory evidence, if this case involved a private person, and so you could go to the Supreme Court and say, okay, given what this private person did, would you create a constitutional tort against him or her? That's one thing. But we don't have any actions of a private person in this case, and so you have to make it up. And so the court is sort of deciding. It's kind of a cart before the horse. Until they decide it, you can't have it. It can't be an analog. There's no case that they're deciding a hypothetical question. All right. Do you have anything else? No, I don't, Your Honor. Thank you. Thank you, counsel. Thank you, Your Honor. On that last point, I don't know anywhere where it says that you already have to have a case that exists that says it. The point is there's an analysis that has to be made, and that apparently requires either your honors or if you've certified the Montana Supreme Court to come up with that perhaps hypothetical about a private cause of action. I have one that comes to mind to me is that in a civil case, if an attorney doesn't turn over evidence that's properly requested in discovery, it's happened more than once in Montana, you're darn sure they're going to get a default against them. And so it's a default awarded against them. It has happened in Montana. In the Eisenmenger case, I believe it's called. So if you have someone like an FBI agent or a person, let's just say you have a person that didn't turn over evidence, do you believe there's a state cause of action against that person? I do. And what would that be? Because under the Montana Constitution. Okay. I should have been more clear. Okay. Apart from the Montana Constitution. Okay. Is there a Montana cause of action against that person? I believe so, just based upon, it's almost as if because of the way the Constitution is written in Montana, and in addition to the statute that I cited, Your Honor, to the court, too, there has to be. Okay. That's the point. So I just want to ask if it's, if we're just related to the FBI person and there is an analog or a private right available, then you wouldn't need the constitutional claim and you could just sue this person under the common law or some statute that might be applicable, correct? I believe so, yes. If there's, if there's, it doesn't make any distinction that I understand, at least, as to where the cause of action comes from, be it Constitution or common law, just that there has to be this right as a private citizen against another private citizen or business or whatever. What is the cause of action under the Constitution? I believe that causes of action, simply constitutional torts, is a cause of action. The right to due process, I think, may well include individuals. So that depends on whether or not, you know, a due process violation requires state action. But there is also the fact that in the Constitution, it says that the, enjoying the rights that are inalienable that talk about life and liberty and what have you, that all persons recognize corresponding responsibilities, ergo private. But it doesn't say due process there. Pardon, Your Honor? It doesn't say due process there. The right to liberty and due process? In that particular provision, it is not. The due process provision is in section 16, I believe. I think we're probably enough to try to puzzle this out on our own. Thank you, Your Honor. Thank you very much. Okay. Thank you very much, Your Honor. Case just argued will be submitted. The final case of the morning is Malkandi v. Mukasey.
judges: Reinhardt, Tashima, McKeown